

2015 JUN 15 AM 8: 15

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 71246-2-I |
| Respondent, | |
| v. | DIVISION ONE |
| LEBARON RODNEY PRIM, | UNPUBLISHED OPINION |
| Appellant. | FILED: June 15, 2015 |

LEACH, J. — LeBaron Rodney Prim appeals his conviction for second degree rape of a child. He argues that the State unconstitutionally infringed on his right to confront witnesses and to a fair trial when the prosecutor asked the complaining witness if she wanted to be in the courtroom testifying. Because the prosecutor's question bolstered the credibility of the witness on redirect examination rather than commented on Prim's right to confrontation or a fair trial, the court did not err when it overruled Prim's objection and denied Prim's motion for mistrial. We affirm.

## Background

LeBaron Rodney Prim met J.J. on December 27, 2011. Prim and his brother Roderick Houston were in Washington visiting their mother, Coilette Inge. Twelve-year-old J.J. was a former friend of Houston's from school who came to Inge's house to visit Houston.

J.J. began text messaging with Prim the same day. She left her house through her bedroom window that night without telling her father she was leaving and again went to Inge's house. She found Houston and Prim watching a movie. Several minutes after she arrived, Prim signaled to J.J. to follow him. They kissed in a bathroom, and Prim asked her if she wanted to have sexual intercourse. She nodded yes. They had sexual intercourse on the bathroom floor.

After J.J.'s father reported this incident, the police investigated J.J.'s allegations and referred the case to the prosecutor, who charged Prim with second degree rape of a child. J.J. testified at trial. On cross-examination, the defense questioned J.J. about the events, the statements she had made to others, and the text messaging she had done. On redirect examination, the prosecutor asked J.J., over defense counsel's objection, why J.J. did not remember the incident and whether she wanted to remember. The prosecutor then asked over objection if she wanted to "be here today." Prim moved for mistrial after J.J.'s testimony, arguing that the prosecutor's question implied that Prim was to blame for making J.J. testify, constituting a comment on Prim's constitutional right to trial. The prosecutor claimed that Prim had attacked J.J.'s credibility on cross-examination. The trial court overruled the objection and denied the motion, noting that "[c]learly the witness was somewhat reluctant, so in a way it was asking the obvious."

A jury found Prim guilty. Prim appeals.

Analysis

Prim argues that the prosecutor improperly commented on his constitutional rights to confront a witness and to a fair trial with the challenged questions to J.J.

To show a prosecutor's comment denied a defendant a fair trial, the defendant must show that a prosecutor's conduct was both improper and prejudicial.[1] Where a prosecutor's comments are improper and defense counsel objected at trial, the defendant must show a substantial likelihood that the comments prejudiced the jury's verdict.[2] We review a prosecutor's allegedly improper arguments in the context of the entire argument, the issues in the case, the evidence the argument relied on, and the jury instructions.[3]

At trial, the prosecutor asked J.J. a series of questions on redirect examination:

> [PROSECUTOR]: Why don't you remember [how many times you had been to Inge's house before December 27]?
>
> [J.J.]: It's hard to remember because it was a long time ago, and some things are kind of vague.
>
> [PROSECUTOR]: Do you want to remember?
>
> [J.J.]: No.
>
> [PROSECUTOR]: How come?
>
> [DEFENSE]: Object as to relevance.

---

[1] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).
[2] State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).
[3] State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).

| | |
|---|---|
| THE COURT: | Overruled. . . . |

. . . .

| | |
|---|---|
| [J.J.]: | What was the question again? |
| [PROSECUTOR]: | I asked you do you want to remember and you said no, and I said how come. |
| [J.J.]: | Because it's painful to think about. |
| [PROSECUTOR]: | Why? |
| [J.J.]: | Because I can't go back and change things. |
| [PROSECUTOR]: | [J.J.], do you want to be here today? |
| [DEFENSE]: | I'd object as to relevance. |
| THE COURT: | Overruled. |
| [J.J.]: | No. |
| [PROSECUTOR]: | How come? |
| [J.J.]: | It's uncomfortable. |

Prim argues that the prosecutor's question implied that Prim had caused J.J. additional harm by exercising his right to a trial and to confront witnesses.

The federal and state constitutions guarantee a defendant the right to a fair trial where he can confront witnesses.[4] And the State may not draw adverse inferences from a defendant's exercise of a constitutional right.[5] When a prosecutor's comment implicates a constitutional right, we review under the constitutional harmless error standard, which requires that this court reverse

---

[4] U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22.
[5] State v. Moreno, 132 Wn. App. 663, 672-73, 132 P.3d 1137 (2006) (quoting State v. Rupe, 101 Wn.2d 664, 705, 683 P.2d 571 (1984)).

unless overwhelming evidence convinces us beyond a reasonable doubt of the defendant's guilt.[6] But "not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights."[7] We look to see if the prosecutor manifestly intended the remarks to be a comment on a defendant's constitutional rights.[8] Where the focus of a prosecutor's question is not on the right itself, it does not violate the defendant's constitutional right at issue.[9]

In State v. Gregory,[10] the State tried the defendant on three counts of rape. During trial, the prosecutor asked the alleged victim how she felt about having to testify; she testified over objection that it was a "horrific experience" and that she hated having to remember everything.[11] On appeal, Gregory argued that asking the alleged victim how she felt about cross-examination violated his rights to a fair trial and confrontation.[12] Our Supreme Court concluded that because the prosecutor's questions focused on the victim's credibility and not Gregory's constitutional rights, the questions did not violate those rights.[13]

---

[6] Moreno, 132 Wn. App. at 671-72.
[7] State v. Gregory, 158 Wn.2d 759, 806, 147 P.3d 1201 (2006) overruled on other grounds by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014).
[8] Gregory, 158 Wn.2d at 806-07.
[9] Gregory, 158 Wn.2d at 807.
[10] 158 Wn.2d 759, 778, 147 P.3d 1201 (2006) overruled on other grounds by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014).
[11] Gregory, 158 Wn.2d at 805-06.
[12] Gregory, 158 Wn.2d at 806.
[13] Gregory, 158 Wn.2d at 808.

The Gregory court distinguished State v. Jones.[14] In Jones, the defendant took issue with the prosecutor's positioning between himself and the seven-year-old victim as she testified.[15] The prosecutor in Jones's cross-examination drew attention to the fact that Jones had been "frustrated" that she had blocked his view of the victim.[16] And in her closing argument, the prosecutor stated that while society purports to care about children, "we still have a system that requires that child to . . . sit in this chair in a courtroom such as this, with the defendant sitting right there, staring at them."[17] This court found the prosecutor's comments invited the jury to draw a negative inference from the defendant's exercise of his right to confrontation of an accusing witness.[18] It also found that the improper comments were harmless beyond a reasonable doubt due to overwhelming evidence of Jones's guilt.[19] And in State v. Moreno,[20] when the prosecutor pointed directly to the defendant's constitutional right, arguing that the defendant exercised his right to defend himself because power was so important to him, this court found—and the State conceded—that the comment was improper.

Prim argues that like Jones, the prosecutor's questions to J.J. pointed directly to Prim's constitutional right to confront J.J. rather than to J.J.'s credibility. Because Prim did not testify, he argues that unlike Gregory, the case

---

[14] 71 Wn. App. 798, 863 P.2d 85 (1993).
[15] Jones, 71 Wn. App. at 805.
[16] Jones, 71 Wn. App. at 805.
[17] Jones, 71 Wn. App. at 805-06.
[18] Jones, 71 Wn. App. at 811-12.
[19] Jones, 71 Wn. App. at 812.
[20] 132 Wn. App. 663, 672-73, 132 P.3d 1137 (2006).

was not a credibility contest between the alleged victim and the defendant. But the record shows that Prim's attack on J.J.'s credibility was a large part of his defense. In closing argument, Prim argued that the State failed to prove its case beyond a reasonable doubt but also argued that "the only evidence that would establish the necessary element that Rodney Prim had intercourse with [J.J.] is her account of what happened, and there are many different accounts and they don't fit together." In closing, Prim consistently framed the case in terms of credibility, telling the jury that "[t]he real question is which telling of the story do you choose to believe."

Viewing the prosecutor's questions in the context of the entire argument, the record shows that the challenged questions do not focus on Prim's exercise of his constitutional rights. When J.J. testified for the State, she repeatedly could not remember specific information. During his cross-examination of J.J., Prim exposed inconsistencies in her testimony, asked her about how "ironically" in her written statement she wrote that she was trying to be truthful but that she had initially lied to her father about what had happened, and challenged her memory as to the text messaging she had sent. This cross-examination directly attacked J.J.'s credibility. The record shows that the prosecutor on redirect examination asked questions aimed at restoring J.J.'s credibility. In this context, the prosecutor asked J.J. why she couldn't remember certain information and asked if she wanted to be there testifying. Thus, the prosecutor's questions did not comment on the defendant's right to confrontation or a fair trial but attempted to

explain J.J.'s reluctance, lack of memory, and inconsistencies to the jury.  We thus conclude that the prosecutor's questions were not improper.

Conclusion

Because the prosecutor's questions did not focus on Prim's constitutional right to confrontation or a fair trial, they were not improper, and the trial court did not err when it overruled Prim's objection or denied Prim's motion for mistrial. We affirm.

Leach, J.

WE CONCUR:

Appelwick, J.

Becker, J.